### BRENNER v. STAVINSKY et al.

No. 28417. March 7, 1939.

Rehearing Denied March 28, 1939.

A. E. Montgomery, for plaintiff in error.

Roy F. Ford, for defendants in error.

DAVISON, J. This is an appeal from an order and decision of the district court of Tulsa county sustaining a demurrer of the defendants, Oscar Stavinsky and Jake Hilenberg, to the amended petition of the plaintiff, L. M. Brenner, and dismissing plaintiff's action.

The order of appearance in this court is the same as in the trial tribunal and our continued reference to the parties will be by their trial court designation.

The parties to the action are competitors in the tailoring business in the city of Tulsa. The defendants prior to their entry into the competitive field were employees of the plaintiff in the same business.

The question for determination is whether the plaintiff may restrain by injunction the defendants' use of a list of the plaintiff's customers compiled by them while they were in plaintiff's employment.

The question is one of first impression in this jurisdiction, although it has been a subject of frequent consideration in other jurisdictions as exemplified by annotations upon the subject in 23 A. L. R. 423, 34 A. L. R. 399, and 54 A. L. R. 350. The decisions of our sister states are not in entire accord upon the conclusions announced, nor does harmony as to reason permeate the various judicial expressions upon the subject. In all of the "border line" decisions, however, the particular facts of the case constitute an important factor in the result announced.

The plaintiff, according to his amended petition, has been engaged in the tailoring business in the city of Tulsa since 1919. He asserts that only about 10 per cent. of the population of any community have their clothes made to order. By strict and careful attention to business and by effort and initiative on his own part, he has established a tailoring business in Tulsa and has a "clientele" of about 1,500 persons who regularly patronize him. He employs about 20 persons to work upon the various garments ordered by his customers. In 1934, he employed the two defendants, who were then strangers in Tulsa. The duties of their employment required them to cut or tailor portions of garments ordered by customers. They worked in the "manufacturing" portion of plaintiff's establishment and did not come in personal contact with the customers. However, each garment as it progressed through the hands of the workmen had the name of the customer affixed thereto for identification purposes. Thus the defendants had access to, and an op-

portunity to become familiar with, the identity of plaintiff's customers, and according to the plaintiff during the period of their employment they compiled a list of such customers.

In 1937, the defendants ceased to be employees of the plaintiff and established a competitive business. They immediately began to use the list of plaintiff's customers and circularize the names thereon with advertising matter and otherwise to solicit business from them advertising in substance that they were formerly employed by the plaintiff, that they did the designing, cutting, and manufacturing for him, and that they were in a position to furnish the same garments with the same quality of workmanship and material as those furnished by the plaintiff at a lower price.

The plaintiff sought, as stated in the prayer of his petition, to prevent by injunction the use of the list of customers or any information concerning such customers obtained by the defendants while in the employment of the plaintiff. He also demanded $5,000 damages for asserted pecuniary loss by reason of the defendants' alleged wrongful acts.

In presenting the case to this court he urges only that he is entitled to injunctive relief, thus having abandoned the feature of his case relating to damages.

It is generally held that, in the absence of a contract to the contrary, a former employee may upon entering the competitive field with his erstwhile employer, either as the employee of another or on his own initiative, solicit the business of the latter's customers. See annotations in A. L. R. (23 A. L. R. 423; 34 A. L. R. 399; 54 A. L. R. 350, supra) in which numerous cases are listed demonstrating the prevalence of this view. The theory of the cases which have been decided upon consideration of this general rule, or, perhaps more accurately stated, the theory of the cases from which the general rule has been formulated, has been variously expressed. Thus it has been said that a contrary view would compel the employee "to give up all the friends and business acquaintances made during the previous employment" and "tend to destroy the freedom of employees and reduce them to a condition of industrial servitude. Fulton Grand Laundry Co. v. Johnson, 140 Md. 359, 117 A. 753; 23 A. L. R. 420. In Garst v. Scott, 114 Kan. 676, 220 P. 277, 34 A. L. R. 395, it is broadly asserted that the employee, "on quitting his employment, has the right to engage in business in direct competition with that of his employer," and that "no reason is apparent why he should not compete with the former employer for the customers of that employer," and the New York court has affirmed that "equity has no power to compel a man who changes employers to wipe clean the slate of his memory." Peerless Pattern Co. v. Pictorial Review Co., 147 App. Div. 715, 132 N. Y. S. 37.

However, even the cases which have denied injunctive relief have recognized that the rule, though of general, is not of universal application. Thus in Fulton Grand Laundry Co. v. Johnson, supra, the court said:

"* * * We do not decide that there might not be cases in which an employer should be protected from the use by an employee of a list of customers fraudulently and surreptitiously obtained. * * *"

And in Garst v. Scott, supra, the Kansas court distinguished but did not disturb the earlier Kansas case of Morrison v. Woodbury, 105 Kan. 617, 185 P. 735, where equitable relief was afforded an employer, engaged in the insurance business, to prevent a former employee from using lists of policyholders and information concerning expiration dates of policies which were obtained by the former employee during the period of his employment.

In the annotations in A. L. R. mentioned, supra, the general prevalence of a definite exception is recognized. It is said that:

"A former employee may be enjoined from using in soliciting the customers of his former employer, lists of customers, copies of business records or the like, which he obtained by virtue of his employment." (23 A. L. R. 427)

Similarly it is said in 14 R. C. L. (page 403, paragraph 103), with reference to injunctive relief:

"Another instance, which is generally regarded as justifying the same relief, is the attempt by an employee to use, either solely for his personal interests or in connection with his services and relations to a new employer, lists of customers, knowledge of which was acquired by reason of his former employment and is regarded as confidential."

And in 32 C. J. 160, paragraph 217, it is said:

"* * * The names of the customers of a

business concern whose trade and patronage have been secured by business effort, and the expenditure of time and money, constituting a part of the good will of a business which enterprise and foresight have built up, should be deemed just as sacred and entitled to the same protection as a secret of compounding some article of manufacture and commerce. Accordingly, while there is authority directly to the contrary, it has been held that an employee, who, without the employer's customers or patrons * * * will be enjoined from using such lists in a similar business for the purpose of taking away business from his former employer for himself or others."

Harmony does not prevail as to the grounds upon which this exception is recognized, but the most common view is that a list of customers built up through years of effort in a line of business where such a list constitutes an important asset of business is a species of property in the nature of or comparable to a trade secret, and that where an employee obtains such a list through confidence placed in him or surreptitiously, he may be restrained from using it. This court would be loath to say, however, that the use by a former employee of his memory independent of any compiled list could be restrained, in the absence of a contract to the contrary.

We believe the exception as to the use of lists to be sufficiently well grounded in principle to obtain recognition in this jurisdiction. In so far as plaintiff has asserted the surreptitious compilation of a list of his customers by the defendants and sought to enjoin its use, he has brought himself within the recognized exception and is entitled to equitable relief.

Of course, equity will not interfere with the right of defendants to do business with these customers, but may forbid the initiation or solicitation of business by the use of the lists surreptitiously compiled by them (on this point but not otherwise, see Colonial Laundries, Inc., v. Henry, 48 R. I. 332, 138 A. 47, 54 A. L. R. 343).

It follows that the trial court should have overruled the defendants' demurrer to the amended petition. The cause is accordingly reversed.

BAYLESS, C. J., WELCH, V. C. J., and CORN and GIBSON, JJ., concur.