**CENTRAL PLASTICS COMPANY, an Oklahoma Corporation, Appellant,**

v.

**John W. GOODSON and Wayne Manufacturing, Inc., an Oklahoma Corporation, Appellees.**

**No. 46783.**

Supreme Court of Oklahoma.

May 6, 1975.

Rehearing Denied July 14, 1975.

Dunlap, Laney, Hessin, Dougherty & Codding by C. Clark Dougherty, Jr., Oklahoma City, for appellant.

Abernathy & Abernathy by Kenneth Abernathy, Shawnee, for appellees.

HODGES, Vice Chief Justice.

This case involves purported violations of the Oklahoma Deceptive Trade Practices Act, 78 O.S.1971 §§ 51–55, and unfair competition through the alleged misappropriation and wrongful use of trade secrets.

Central Plastics Company, an Oklahoma Corporation, (Central Plastics) claims that John W. Goodson, (Goodson) its former employee, and Wayne Manufacturing Company, an Oklahoma Corporation, (Wayne Manufacturing) engaged in unfair competition through misappropriation of trade secrets, supplier and customer lists. Relief is also sought under the Deceptive Trade Practices Act. Central Plastics asserts that Wayne Manufacturing and Goodson

knowingly distributed advertising which contained false representations in violation of 78 O.S.1971 § 53.

The case was tried to the court in camera. The trial court found that the allegations in Central Plastic's petition were not supported by the evidence and rendered judgment in favor of Goodson and Wayne Manufacturing.

Goodson was employed by Central Plastics in 1956. He worked at several positions until 1960, when he was promoted to shop foreman. During the time he was employed by Central Plastics, the company with his assistance, and that of his father, developed pertinent business information including: customer information indicating the products purchased by the customer and the customer's purchasing agent; cost indices relating to products manufactured; drawings, size and dimension specifications; a process for molding and bonding plastic material to metal surfaces of meter swivels and unions; tooling, including molds and dies developed in the manufacture of its products; information relating to suppliers of raw materials.

On February 9, 1970, Goodson and another employee left Central Plastics and formed Wayne Manufacturing. Goodson ordered identical equipment to that used by Central Plastics. Immediately he sent letters to prospective customers accompanied by samples of fittings and products which he planned to manufacture.

On February 1, 1972, Central Plastics sued Goodson and Wayne Manufacturing for the alleged misappropriation of trade secrets. Central Plastics charged Goodson had access to confidential information during his employment which he knew was confidential. It alleged Goodson misappropriated secrets relating to: the manufacture of insulated meter swivels, transition fittings, meter risers; blueprints and designs concerning molding and bonding of plastic material to the metal surfaces of swivels and unions; tooling, including molds used in the production thereof; information used in the production of meter risers and transition fittings; and customer supplier lists.

Central Plastics did not manufacture meter swivels. It took uninsulated meter swivels and applied insulation to them. Central Plastics also coated meter risers furnished by customers and assembled transition fittings, the transition between plastic and steel pipe.

A few days after Goodson left Central Plastics, February 13, 1970, he obtained an order from Oklahoma Natural Gas Company (ONG) for 602 transition fittings identical to those previously furnished to ONG by Central Plastics.

The former employee who left Central Plastics to help Goodson form Wayne Manufacturing testified that he had taken materials, price and customer lists from Central Plastics to Wayne Mnufacturing as had Goodson. This employee had returned to Central Plastic's employment.

Goodson denied that he had taken any trade secrets. He testified that he was able to develop his own designs, customer and supplier lists by using his memory, experience, and his father's advice.

Loyd Goodson, the father of appellee, testified he had been employed by ONG for forty-six years. For fifteen years prior to his retirement, he was General Distribution Engineer. He suggested to his neighbor, Melvin Pourchot, the founder of Central Plastics, that ONG was having difficulty in obtaining an effective insulated meter swivel to prevent shorts into the house pipes of customers and to cathodically protect the water system in Shawnee. Loyd Goodson drew a rough diagram of his idea for the swivel for Pourchot and provided him with swivels to experiment with from ONG. The swivel was perfected and ONG became Central's first customer. Goodson provided Pourchot with a suggested customer list including the registration of the American Gas Association Convention, the Southern Gas Association, National Association of Engineers, and

Brown's Directory (all readily available to those in this field), and with technical information regarding needs of the gas pipeline industry.

Later, Goodson also suggested to Central Plastics that it get into the business of assembling transition fittings when ONG began the installation of plastic pipe. Various products were developed at Central Plastics as the result of information supplied by Loyd Goodson.

The ONG Company newsletter of November 4, 1968, described an improved method of transition fittings and plastic pipe distribution systems, which it had developed in cooperation with Central Plastics. It stated that the new method eliminated metal welding and that Loyd Goodson was largely responsible for the idea.

The testimony concerning the insulated meter swivel, meter riser and transition fittings was disputed. One expert testified that the molds necessary for production could be duplicated after a great deal of trial and error. The other was of the opinion that it was a very simple procedure and that the devices totally disclosed the elements of their construction.

The trial court found: the molds and method of making transition fittings, meter risers, and insulated meter swivels were not unique nor secretive; there was nothing that any person similarly skilled in that trade could not develop; the evidence did not disclose the Central used any unusual or secret material or equipment, and that the procedures were of common practice. The court also found that: any customer lists, plans, or designs, which might have been taken consisted of information which was available anywhere: Goodson might not have known about them except from his father but they were matters which anyone starting out in the business could acquire. The court stated the father had as much right to convey this information to his son as a competitor of Central Plastics as he did originally to Central Plastics, and getting the information and help from his father was not a violation of the Deceptive Trade Practices Act or any common law unfair competition provisions.

It is acknowledged in the Restatement of Torts that an exact definition of a trade secret is not possible. However, in several cases the courts have approved the definition of a trade secret found in Restatement of Torts § 757(b) (1939):

"The subject matter of a trade secret must be secret. Matters of public knowledge in an industry cannot be appropriated by one as his secret. Matters which are completely disclosed by the goods which one markets cannot be a secret. Substantially, a trade secret is known only in the particular business in which it is used. It is not requisite that only the proprietor of the business know it. He may without losing his protection communicate it to employees involved in its use. We may likewise communicate it to others pledged to secrecy. Others may also know if it independently, as, for example, when they have discovered the process or formula by independent invention and are keeping it a secret. Nevertheless, a substantial element of secrecy must exist, so that, except by the use of improper means, there would be difficulty in acquiring the information * * *."

■ Trade secrets and confidential information, in order to be protected against disclosure by employees, must be the particular secrets of the employer as distinguished from the general secrets of the trade in which he is engaged. Aetna Bldg. Maintenance Co. v. West, 39 Cal.2d 198, 246 P.2d 11 (1952).

■■ A trade secret is a formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to gain an economic advantage over competitors who do not know or use it. A trade secret must have a substantial element of secrecy.

While it need not be patentable it must contain elements which are unique and, not generally known or used in the trade. National Tile Board Corp. v. Panelboard Mfg. Co., 27 N.J.Super. 348, 99 A.2d 440 (1953).

■ The courts in Furr's, Inc. v. United Specialty Advertising Company, 338 S.W.2d 762, 765 (Tex.Civ.App.1960) and in Houser v. Snap-On Tools Corp., 202 F.Supp. 181, 187 (D.C.Md.1962), stand for the premise that there can be no trade secret with respect to a marketed device where an examination of the device completely discloses the elements of its construction.

Although the evidence was in dispute, the trial court findings are supported by the evidence, and we find no reversible error on this issue.

■ It is usually held that an employee's knowledge of his employer's customers, acquired by him as an ordinary employee and not by virtue of any peculiar trust or confidence placed in him, is not a trade secret, and in the absence of an express prohibitory agreement, the employee may on a change of employment solicit such customers as long as he proceeds from his memory rather than by the unauthorized use of a list of customers. Suburban Gas of Grand Junction, Inc. v. Bockelman, 157 Colo. 78, 401 P.2d 268 (1965). Some cases hold that the distinction between taking written lists and memorized information is immaterial. We believe it is the more sound approach. See Jet Spray Cooler, Inc. v. Crampton, 282 N.E. 2d 921, 925 (Mass.1972); Morgan's Home Equipment Corp. v. Martucci, 390 Pa. 618, 136 A.2d 838 (1957). J. L. Cooper & Co. v. Anchor Securities Co., 9 Wash.2d 45, 113 P.2d 845 (1941).

The only Oklahoma Supreme Court case involving use of employer customer list by former employee recognized the general rule, although an exception to the rule was determinative of the appeal because the court found the list had been compiled surreptitiously. In the syllabus of Brenner v. Stavinsky, 184 Okl. 509, 88 P.2d 613 (1939) the court held:

> "Generally, in the absence of a contract to the contrary, a former employee may upon entering the competitive field with his erstwhile employer either as an employee or another or on his own initiative solicit the business of the latter's customers."

■■ An employee has the right to engage in a competitive business for himself and to compete for the business of customers of his former employer provided such competition is fairly and legally conducted. The courts have set the following criteria to determine what constitutes unfair competition by a former employee: 1. The information was confidential and not readily available to competitors; 2. The former employee solicited the customers of his former employer with the intent to injure him; 3. The former employee sought out certain preferred customers whose trade is particularly profitable and whose identities are not generally known to the trade; 4. The business is such that a customer will ordinarily patronize only one concern; 5. Unless interfered with, the established business relationship between the customer and the former employer would normally continue. Reid v. Mass Company, 155 Cal.App.2d 293, 318 P.2d 54, 60 (1957); Aetna Building Maintenance Co. v. West supra.

■ In the case at bar, the trial court found that most of the "so called customer list" was available anywhere, and that Goodson's father had as much right to convey it to him as he had initially to Central Plastics. We agree. Although somewhat disputed, the court found the customer list was originally suggested by Loyd Goodson. At his suggestion ONG purchased Central Plastic's products.

■ The majority of jurisdictions recognize the rule that names and addresses

of customers and suppliers which are easily ascertainable or available generally to the public or trade do not constitute trade secrets or confidential information. See Denawetz v. Milch, 407 Pa. 115, 178 A.2d 701 (1962). Best Dairy Farms Inc. v. Houchen, 152 Mont. 194, 448 P.2d 158, 161 (1968); and 28 A.L.R.3d 7, 42 for compilation of cases.

Generally, where former employer is engaged in business as a manufacturer or wholesaler dealing primarily with retail merchants or jobbers, or sells to members of a readily ascertainable class, knowledge of names of customers of employer which a former employee has is not a trade secret which equity will protect through injunction. Renpak, Inc. v. Oppenheimer, 104 So. 2d 642, 646 (Fla.App.1958).

In Suburban Gas of Grand Junction, Inc. v. Bochelman, p. 270 infra, the Colorado court cited Spring Steels, Inc. v. Molloy, 400 Pa. 354, 162 A.2d 370 (1960), where the court quoted from Edwin L. Weigand Co. v. Harold E. Trent Co., 122 F.2d 920, 924 (C.A.3rd Cir. 1941):

"The rule is quite clear that the solicitation of customers and use of customer lists is permissible unless there is a breach of an express contract or violation of some confidence. There must be some element of fraud or trade secrecy involved. * * *." But equity is not protecting mere names and addresses easily ascertainable by observation or by reference to directories."

The trial court evidently found, and we believe that it is supported by the evidence, that Central Plastics did not bring itself within the exception to this rule enunciated in Brenner v. Stavinsky p. 615 supra i. e., where a former employee surreptitiously compiles a list of his employers customers, he may be enjoined from using it. We find this to be especially true where the court stated that the list and many of the

products on ideas had been furnished by Goodson's father.

In situations where fact questions are in dispute the court will not disturb the trial court's judgment on question of proof, where the record as a whole sustains the judgment. Home-Stake Royalty Corporation v. McClish, 187 Okl. 352, 103 P.2d 72 (1940). Credibility of witnesses and effect and weight to be given to conflicting or inconsistent testimony are questions of fact to be determined by trier of facts, whether court or jury, and not questions of law for the Supreme Court on appeal. Video Independent Theatres, Inc. v. Cooper, 421 P.2d 833 (Okl.1966), 26 A.L. R.3d 1308.

The court also found the brochure of Wayne Manufacturing advertising insulated meter swivels and claiming that they had been in business for five years was in error; and that Wayne Manufacturing had taken the brochure of its manufacturer and changed it with their consent and agreement and used it as its own. The court stated:

"* * * it is obvious that they haven't been in the business five (5) years—but they say in the meter swivel market. They don't say in the manufacture of the swivels and make no representations that they manufactured the swivel."

The court held that there was not sufficient evidence that this violated the Deceptive Trade Practices Act.

There is a violation of the Oklahoma Deceptive Trade Practices Act which is patent on the face of the brochure. It was uncontroverted that Wayne Manufacturing had not been in business for 5 years. It had not manufactured 5 million swivels as alluded in its brochure, nor were all the swivels bonded with a high temperature agent.

It is provided by 78 O.S.1971 § 53(a)(2), (5), that it is prima facie evi-

dence of intent to injure competitors and an act constituting a deceptive trade practice, if a person knowingly makes a false representation as to the source of goods or services; makes a false representation as to the characteristics of the goods; represents that the goods are of a particular model if they are not; makes a false representation as to the connection with another. Portions of the brochure fall within these prohibitions.

Remedies under the Act, 78 O.S.1971 § 54(a) provide:

"Any person damaged or likely to be damaged by a deceptive trade practice of another may maintain an action in any court of equitable jurisdiction to prevent, restrain or enjoin such deceptive trade practice. Proof of actual monetary damages, loss of profits or intent shall not be required; but, if in such action damages are alleged and proved, the plaintiff, in addition to injunctive relief, shall be entitled to recover from the defendant the actual damages sustained by him."

We find that the utilization by Wayne Manufacturing of the brochure was a violation of the Deceptive Trade Practices Act, and that its use should be enjoined.

The Act provides that proof of monetary loss of profits is not required but if in an action for injunction such damages are alleged and proved, the plaintiff is entitled to recover actual damages sustained by him. It was stipulated by the parties, and the trial court ordered, the issue of damages would be reserved and heard if necessary after the court's ruling on the issues of liability.

The cause is therefore reversed and remanded for the purpose of determining actual damages, if any, suffered by Central Plastics because of the violation of the Deceptive Trade Practices Act.

WILLIAMS, C. J., and IRWIN, BERRY, LAVENDER, BARNES, SIMMS and DOOLIN, JJ., concur.