584 F.2d 946
 199 U.S.P.Q. 385
 BLACK, SIVALLS & BRYSON, INC., a corporation, Plaintiff-Appellant,
v.
KEYSTONE STEEL FABRICATION, INC., a corporation, Smalling
Engineering& Equipment Co., a corporation, and
Charles E. Smalling, an Individual,
Defendants-Appellees.
 Nos. 76-1886, 76-1887.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted Jan. 25, 1978.
Decided Sept. 20, 1978.
Rehearing Denied Nov. 6, 1978.
 
 Douglas E. Olson and Robert C. Weiss (on the brief), of Lyon & Lyon, Los Angeles, Cal., for appellant.
 Carter H. Kokjer and Richard R. Johnson (on the brief), of Lowe, Kokjer, Kircher, Wharton & Bowman, Kansas City, Mo., and Keith McMillin (on the brief), of Kornfield, McMillin, Phillips & Upp, Oklahoma City, Okl., for appellees.
 Before SETH, Chief Judge, and LEWIS and McKAY, Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 At great expense, plaintiff Black, Sivalls & Bryson, Inc. (BS&B) acquired the patent and developed a market for a device designed to uniformly heat certain industrial fluids. The process involves the passage of fluids through tubes which are warmed by superheated air from a burner. The principal design difficulties in this process relate to the optimum tube wall thickness for heat convection and the best method of passing the heat uniformly over the tubes themselves. When defendant Smalling,[1] the former head of BS&B's heater sales group, left BS&B and immediately began to underbid his former employer in the industrial fluid heater market, BS&B became suspicious that Smalling may have infringed its patent or at least stepped over that unfathomable line between the use of personal experience and the employment of trade secrets. BS&B brought an action based on both theories.
 
 
 2
 BS&B's discovery enabled it to offer proof at trial that Smalling's quick and successful market entry was accomplished with no prior experience in heater design except that gained with BS&B. BS&B was also able to present evidence that: (1) when originally introduced, BS&B's heater was "unique" and few heaters could achieve generally uniform temperatures around the heater tubes; (2) there was functional equivalency and some design similarity between the two heaters; (3) Smalling's first successful underbidding was confidently accomplished without building or testing a prototype of the proposed unit; (4) Smalling commenced his design calculations for tube wall dimensions with a certain critical mathematical number which had been identified by BS&B after much experimentation and which was employed as an "outside heat transfer coefficient" to calculate the proper tube wall thickness (this coefficient will be denominated "0" to preserve its claimed trade secret status); (5) Smalling's only explanation for commencing calculations with the coefficient instead of deriving it through trial and error was that he had pulled the number "out of the air"; (6) Smalling had BS&B's design manual, several design reports, and BS&B pricing information in his possession when he left BS& B. The monumental record contains other evidence which the parties insist is important, but these are the highlights which set the stage for the determination of this appeal.
 
 
 3
 BS&B demanded a jury trial as to all of the issues, but the court separated the trial into two phases. The first trial was before the court and dealt with patent validity and infringement. Issues regarding unfair competition were subsequently tried to a jury.
 
 Patent Infringement
 
 4
 The first issue to consider is whether the trial court erred in not permitting a jury trial on the questions of patent validity and infringement. Patent infringement claims are normally tried in two parts. If patent validity is established in the first trial, then a trial on the issue of claimed infringement follows. See McCullough Tool Co. v. Well Surveys, Inc., 343 F.2d 381, 388 (10th Cir. 1965), Cert. denied, 383 U.S. 933, 86 S.Ct. 1061, 15 L.Ed.2d 851, 385 U.S. 990, 87 S.Ct. 601, 17 L.Ed.2d 451 (1966). In the instant case, the trial court heard both validity and infringement testimony in the same proceeding. There is no doubt that BS&B reserved its claimed right to try the validity issue to a jury. However, we are satisfied that BS&B specifically waived in open court its right to a jury trial on the issue of infringement. The following colloquy settles that matter:
 
 
 5
 (PLAINTIFF'S COUNSEL): Your Honor, in the interest of expediting things, in reviewing our evidence, it would appear that we have put in substantial evidence relating to the question of infringement as well as the validity question and we feel, as we have indicated before, because of the great advances with regard to safety to society like Lansfield that on the validity issues, the factual background, they think should be determined by the jury, as we talked about before, but as to the infringement issues, they seem to develop this primarily technical issue, which Your Honor seems to have a grasp of, and as to the infringement question, we feel it can properly be decided by the Court.
 
 
 6
 THE COURT: Are the Defendants agreeable to that? Unless both sides prefer it, I won't take the responsibility. If both sides prefer it, why, it's my duty to take the responsibility.
 
 
 7
 (DEFENSE COUNSEL): Your Honor, I'm certainly more than happy to have the Court decide the infringement. . . .
 
 
 8
 . . . . CO
 
 
 9
 THE COURT: . . . Since you both expressed a desire, I'll take the responsibility of deciding the infringement matter and then we will see where we are.
 
 
 10
 You may proceed.
 
 
 11
 (PLAINTIFF'S COUNSEL): Thank you, Your Honor.
 
 
 12
 And as I said, I did wish to indicate that the jury issue on validity, my clients don't wish to waive that question.
 
 
 13
 THE COURT: Now, state that again. I'm not sure maybe I misunderstood you. I thought you did want to submit the infringement issue to me instead of to a jury.
 
 
 14
 (PLAINTIFF'S COUNSEL): That's right. But as to the validity issues, they still want to retain their right to a jury.
 
 
 15
 THE COURT: Oh, I see. As to validity you still say that is a jury question
 
 
 16
 (PLAINTIFF'S COUNSEL): The underlying fact issues.THE COURT: and you want your record on that to show that I ruled that it was not and heard that arbitrarily but the infringement you ask that I hear it; am I right?
 
 
 17
 (PLAINTIFF'S COUNSEL): Substantially yes, Your Honor.
 
 
 18
 THE COURT: All right.
 
 
 19
 Joint Appendix, No. 76-1886, vol. 4, at 410-12. It is difficult to conceive of a clearer waiver of a right to jury trial. See Country (Social) Club of Savannah, Inc. v. Sutherland, 411 F.2d 599, 600 (5th Cir. 1969) (per curiam); 5 Moore's Federal Practice P 39.03 (2d ed. 1977). Rule 39(a) of the Federal Rules of Civil Procedure provides:
 
 
 20
 When trial by jury has been demanded . . . the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record, . . . by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury . . . .
 
 
 21
 Unquestionably, the requirements of Rule 39(a) were met by the attorneys' verbal stipulation.
 
 
 22
 Although the trial court refused BS&B's demand for a jury trial on the validity issue, that error was cured by the fact that in deciding the infringement issue against BS&B the court treated the claimed patent as though it were valid without formally ruling on the validity issue. Where the court properly finds no infringement, it would be improper to rule on the validity of the patent. Under such circumstances "(t)o hold a patent valid if it is not infringed is to decide a hypothetical case." Altvater v. Freeman, 319 U.S. 359, 363, 63 S.Ct. 1115, 1117, 87 L.Ed. 1450 (1943).
 
 
 23
 Plaintiff also challenges as erroneous the trial court's finding on the infringement issue. "The question of infringement is one of fact and, upon review, the trial court's findings thereon will not be set aside unless they are clearly erroneous. . . . Therefore, our power of review is limited to determining whether, under correct legal standards, the findings of (noninfringement) are supported by the record." McCullough Tool Co. v. Well Surveys, Inc., 343 F.2d at 401. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Fed.R.Civ.P. 52(a). "To no type of case is (the quoted portion of Rule 52(a)) more appropriately applicable than to (patent controversies), where the evidence is largely the testimony of experts." Graver Tank & Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 274, 69 S.Ct. 535, 537, 93 L.Ed. 672 (1949), Aff'd on rehearing, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). While the competing heaters solved the same industrial problems and reflected certain design similarities, there were also substantial design differences. Based on the record before us, we cannot say the finding of the court below that plaintiff failed to meet its burden of proving infringement is clearly erroneous. See Becker v. Webcor, Inc., 289 F.2d 357, 360-61 (7th Cir. 1961), Cert. denied, 368 U.S. 970, 82 S.Ct. 445, 7 L.Ed.2d 398 (1962).
 
 
 24
 BS&B's other claims of procedural error in the trial of the patent infringement claim, while pointing out some novelty in the trial court's procedures, do not establish that the trial court in any respect went beyond the legal pale. BS&B complains that the trial court made reference in its judgment to a claimed Patent No. 3,265,113 after the attorneys had agreed to dismiss the action with reference to that patent and after the court had verbally granted the dismissal with prejudice. Since that patent was not properly before the court upon the entry of judgment, the references to it were improper and upon remand the judgment should be corrected accordingly.
 
 Unfair Competition
 
 25
 The trial court submitted to the jury the questions of whether relevant trade secrets existed and whether Smalling had illegally appropriated them. After a jury deadlock had occurred, the trial court granted defendants' previously raised motion for a directed verdict and entered judgment for defendants. While many troublesome issues were raised about the propriety of jury instructions and judicial comments to the jury, the question of the correctness of the directed verdict is determinative of this phase of the appeal. See Maryland Casualty Co. v. Toups, 172 F.2d 542, 547-48 (5th Cir.), Cert. denied, 336 U.S. 967, 69 S.Ct. 939, 93 L.Ed. 1119 (1949).
 
 
 26
 The standard for reviewing the propriety of directed verdicts is whether there is a genuine issue of material fact to be resolved by the trier of the fact. 6 Moore's Federal Practice P 56.04(2) (2d ed. 1976). Stated positively, a verdict should "be directed where both the facts and the inferences to be drawn from the facts point so strongly in favor of one party that the court believes that reasonable men could not come to a different conclusion." 5A Moore's Federal Practice P 50.02(1) (2d ed. 1977). E. g., Brady v. Southern Ry. Co., 320 U.S. 476, 479-80, 64 S.Ct. 232, 88 L.Ed. 239 (1943); C. H. Codding & Sons v. Armour & Co., 404 F.2d 1, 7 (10th Cir. 1968); Wilkin v. Sunbeam Corp., 377 F.2d 344, 347 (10th Cir.), Cert. denied, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 464 (1967); Adams v. Powell,351 F.2d 273, 274 (10th Cir. 1965); Kippen v. Jewkes, 258 F.2d 869, 873 (10th Cir. 1958); Brodrick v. Derby, 236 F.2d 35, 37 (10th Cir. 1956). In applying the directed verdict standard we must view the evidence in the light most favorable to the party against whom the motion for a directed verdict was addressed and give such party the benefit of all inferences which the evidence fairly supports, even though contrary inferences could reasonably be drawn. E. g., Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 696, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962); Miller v. Brazel, 300 F.2d 283, 286 (10th Cir. 1962). In view of these exacting requirements, it is apparent that directed verdicts "should be cautiously and sparingly granted." Wilkin v. Sunbeam Corp., 377 F.2d at 347.
 
 
 27
 Plaintiff argues on appeal that the evidence showed the following to be trade secrets: (1) the identity and application of the coefficient 0; (2) the volute design;[2] (3) the burner design; (4) the control panel; (5) pricing information which estimated the man-hours and materials necessary to build a heater and was useful in calculating the bid price of plaintiff's heaters; and (6) information regarding customers of plaintiff. We are satisfied from our examination of the record and the application of proper standards of review that BS&B presented enough evidence to raise a jury issue as to claimed secrets (1) and (5) but not as to the other four.
 
 A trade secret is
 
 28
 a formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to gain an economic advantage over competitors who do not know or use it. A trade secret must have a substantial element of secrecy. While it need not be patentable it must contain elements which are unique and, not generally known or used in the trade.
 
 
 29
 Central Plastics Co. v. Goodson, 537 P.2d 330, 333-34 (Okl.1975). See Telex Corp. v. International Business Machs. Corp., 510 F.2d 894, 928 (10th Cir.), Cert. dismissed, 423 U.S. 802, 96 S.Ct. 8, 46 L.Ed.2d 244 (1975). To prevail in its claim that defendants wrongfully appropriated its trade secrets, plaintiff must establish that: (1) a trade secret existed, (2) defendants acquired the trade secret through a confidential relationship, and (3) defendants used the trade secret without authorization from plaintiff. E. W. Bliss Co. v. Struthers-Dunn, Inc., 408 F.2d 1108, 1112 (8th Cir. 1969); Wilkin v. Sunbeam Corp., 377 F.2d at 346; Official Airlines Schedule Information Serv., Inc. v. Eastern Air Lines, Inc., 333 F.2d 672, 673-74 (5th Cir. 1964).
 
 
 30
 The record indicates that several of plaintiff's claimed trade secrets may be discovered through an examination of plaintiff's patent or its heaters. In addition, some had been revealed in information which had been published or otherwise disseminated. As such, they cannot qualify as trade secrets for purposes of this litigation. See Mixing Equip. Co. v. Philadelphia Gear, Inc., 436 F.2d 1308, 1311 n.2 (3d Cir. 1971); Central Plastics Co. v. Goodson, 537 P.2d at 334. But the fact that plaintiff published a paper which contained a number of experimental outside heat transfer coefficients, one of which is close to 0, does not, as a matter of law, preclude 0 and a knowledge of its use from constituting a trade secret.
 
 
 31
 Based on the evidence, a jury could reasonably infer that 0 was helpful to Smalling as a starting point for his calculations and that without it he would not have been able to develop his heater as confidently and quickly as he did. A jury could also infer that Smalling would have been unable to successfully bid on a job without building a prototype were it not for his having that verified starting point. If nothing else, a jury could find that Smalling did not have to experiment with the broad range of disclosed coefficients to determine the proper starting point. Furthermore, based on the evidence regarding Smalling's familiarity with the coefficient through his employment with plaintiff and the fact that Smalling did not present evidence of an independent source of that coefficient, a jury could view with incredulity Smalling's statement that he pulled the number 0 "out of the air."
 
 
 32
 Confidential data regarding operating and pricing policies can also qualify as trade secrets. Mixing Equip. Co. v. Philadelphia Gear, Inc.,312 F.Supp. 1269, 1274 (E.D.Pa.1970), Modified, 436 F.2d 1308 (3d Cir. 1971). It is apparent that the ability to predict a competitor's bid with reasonable accuracy would give a distinct advantage to the possessor of that information. While it may be argued that plaintiff's 1961 pricing information was too out-of-date to give Smalling confidence in its use, it may also reasonably be inferred, since the uncontradicted evidence shows that Smalling possessed that information, that Smalling's immediate success in bidding against plaintiff may have been due at least partially to the use of plaintiff's pricing information. Viewing the evidence in the light most favorable to plaintiff, it may be reasonable to infer that one could compensate for inflation and use plaintiff's pricing information to approximate plaintiff's bid on a particular heater.
 
 
 33
 Smalling argues that, in designing his heaters, he merely used knowledge gained through experience. It is difficult in a case such as this to draw distinctions
 
 
 34
 between the skills acquired by an employee in his work and the trade secrets, if any, of his employer. . . . (T)he former may be used by the employee in subsequent employment while the latter may not. Against this background it seems clear that trade secret status should be accorded the fruits of research carried out by the plaintiff, compiled by plaintiff in the form of charts, graphs, tables and the like for its day-to-day use, and carefully guarded by plaintiff as confidential information.
 
 
 35
 Mixing Equip. Co. v. Philadelphia Gear, Inc., 312 F.Supp. at 1274. Notwithstanding the difficulty of distinguishing between normally acquired skills and trade secret information, where there is circumstantial evidence from which a jury reasonably could infer trade secret use, the question is for a jury to decide.
 
 
 36
 Although the evidence of trade secret misappropriation is not strong, "in our view, the facts and circumstances, when viewed in their totality, do permit the inference that there was such misappropriation." Telex Corp. v. International Business Machs. Corp., 510 F.2d at 928. Assuming 0 and the pricing information to constitute trade secrets, the fact that such information or part of it could have been subsequently procured by Smalling through independent research or experience did not justify Smalling's conduct. See id. at 929. Few others in the field of heater development and manufacturing had obtained plaintiff's result with industrial fluid heaters. Therefore, the jury could assume that had Smalling worked for other heater manufacturers he would not have acquired the knowledge he now asserts the right to use. See Plant Indus. Inc. v. Coleman, 287 F.Supp. 636, 644-45 (C.D.Cal.1968).
 
 
 37
 Viewing the evidence regarding the coefficient 0 and the pricing information in the light most favorable to plaintiff, we are satisfied that there is sufficient circumstantial evidence to take this case to a jury. In reaching this conclusion we do not hold that plaintiff does in fact have trade secrets which were misappropriated by defendants. The evidence "does not point in one direction and different inferences might reasonably be drawn from it. There was, however, sufficient evidence to go to the jury and it is the jury which 'weighs the contradictory evidence and inferences' and draws 'the ultimate conclusion as to the facts.' " Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. at 700-01, 82 S.Ct. at 1411.
 
 
 38
 The trial court's judgment in No. 76-1886 is remanded to allow the trial court to remove the references to Patent No. 3,265,113, and the judgment is affirmed as corrected. The judgment based on the verdict directed for defendants in No. 76-1887 is reversed and that case is remanded for a new trial with reference to the two claimed trade secrets improperly withdrawn from jury consideration.
 
 
 
 [1]
 The other defendants are companies controlled by Smalling and participating in his competitive activities
 
 
 [2]
 Both BS&B and Smalling introduced air into their heaters through a spiral inlet or volute