2010 OK CIV APP 58

**CHILCUTT DIRECT MARKETING, INC., an Oklahoma Corporation, Plaintiff/Appellant,**

v.

**A CARROLL CORPORATION, an Oklahoma Corporation, and James D. Hall, Jr., an Individual, Defendants/Appellees.**

No. 106,961.

Court of Civil Appeals of Oklahoma, Division No. 4.

May 7, 2010.

Timothy A. Heefner, James L. Gibbs, II, Goolsby, Proctor, Heefner & Gibbs, P.C., Oklahoma City, OK, for Plaintiff/Appellant.

Terry W. West, Bradley C. West, Gregg W. Luther, The West Law Firm, Shawnee, OK, for Defendants/Appellees.

DOUG GABBARD II, Presiding Judge.

¶1 Plaintiff, Chilcutt Direct Marketing, Inc. (CDM), appeals the trial court's denial of its motion for new trial following the court's overruling of its motion for an injunction under the Trade Secrets Act. For the following reasons, we affirm.

## FACTS

¶2 The parties involved in this appeal are two direct marketing companies that are competitors, CDM and Defendant A Carroll Corporation (ACC). Defendant James D. Hall, Jr., worked for CDM for 21 years. He resigned in 2006 to work for ACC, telling CDM he would be selling software programs to doctors. He received CDM's permission to keep a copy of his computerized Outlook Address Book and his cell phone number, both of which he said he needed to stay in contact with his friends. The address book contained contact information for approximately 775 CDM customers and business contacts, and had been compiled by CDM over a 25–year period.

¶3 Five days after Hall left CDM, ACC began doing business as "All That Marketing," in direct competition with CDM. Some CDM customers began placing orders with ACC. CDM requested that Defendants cease using the customer list, but its request was rejected.

¶4 CDM then sued ACC and Hall asserting that the customer list on Hall's Outlook Address Book was a trade secret which Defendants had misappropriated. CDM asserted theories of misappropriation of a trade secret, deceit-false representation, deceit-nondisclosure/concealment, and interference with a business relationship. It sought damages and a permanent injunction.

¶5 At trial, the evidence indicated that some of CDM's customers had been contacted by ACC and Hall, and had become ACC

customers. Ultimately, the jury returned a verdict in favor of CDM, awarding $75,000 in damages. The jury specifically found that ACC and Hall had misappropriated a trade secret by using the customer list, and that Hall was also liable for deceit.

¶ 6 Immediately following the verdict, CDM asked the trial court for a permanent injunction enjoining any use of the address book and any contact with the customers listed therein for a time certain. Defendants stipulated they would return all relevant information to CDM, and only keep Hall's personal information. The trial court verbally ordered Defendants to return the list, and stated it would set a briefing schedule to determine "whether or not the defendant should be enjoined from contacting any of [CDM's] customers."

¶ 7 Thereafter, CDM filed a motion for injunctive relief pursuant to 78 O.S.2001 § 87. CDM sought either a prohibitive injunction preventing ACC and Hall from "continued misappropriation of a trade secret," or, alternately, a royalty injunction requiring the payment of a specified royalty for a time certain. ACC and Hall responded that both injunctions were unnecessary because they had returned the CDM customer list and purged it from their phones and computers.

¶ 8 The trial court overruled CDM's motion for an injunction. CDM then moved for a new trial, asserting an injunction was necessary to prevent Defendants from enjoying a commercial advantage due to their misappropriation.[1] The trial court also denied this motion. CDM appeals.

## STANDARD OF REVIEW

¶ 9 An injunction is an "extraordinary remedy, and relief by this means is not to be lightly granted." *Amoco Prod. Co. v. Lindley,* 1980 OK 6, ¶ 50, 609 P.2d 733, 745. Generally, the right to injunctive relief must be established by clear and convincing evidence. *Sharp v. 251st Street Landfill, Inc.,* 1996 OK 109, ¶ 5, 925 P.2d 546, 549. The granting of a mandatory injunction is largely

a matter for the trial court's discretion and depends upon a consideration of all the equities between the parties. *Kasner v. Reynolds,* 1954 OK 56, ¶ 25, 268 P.2d 864, 867. Similarly, a trial court's decision on a new trial motion is a matter reviewed for abuse of discretion, and will not be disturbed on appeal unless it clearly appears the court erred in "some pure simple question of law or acted arbitrarily." *Poteete v. MFA Mut. Ins. Co.,* 1974 OK 110, ¶ 24, 527 P.2d 18, 22.

## ANALYSIS

¶ 10 Whether an employer may obtain an injunction prohibiting a former employee from using a list of the employer's customers has been the subject of frequent litigation over a number of years. In *Brenner v. Stavinsky,* 1939 OK 131, 184 Okla. 509, 88 P.2d 613, the Oklahoma Supreme Court addressed this question and stated:

It is generally held that, in the absence of a contract to the contrary, a former employee may upon entering the competitive field with his erstwhile employer, either as the employee of another or on his own initiative, solicit the business of the latter's customers.... [A] contrary view would compel the employee "to give up all the friends and business acquaintances made during the previous employment" and "tend to destroy the freedom of employees and reduce them to a condition of industrial servitude." *Fulton Grand Laundry Co. v. Johnson,* 140 Md. 359, 117 A. 753, 23 A.L.R. 420 [ (1922) ]....

\*　　\*　　\*

[A] list of customers built up through years of effort in a line of business where such a list constitutes an important asset of business is a species of property in the nature of or comparable to a trade secret, and that where an employee obtains such a list through confidence placed in him or surreptitiously, he may be restrained from using it. This court would be loath to say, however, that the use by a former employ-

---

1. CDM also asserted "irregularities" occurred in that one trial judge had presided over the trial, while another decided the injunction issue. This argument was not briefed on appeal, and, there-

fore, is treated as abandoned. *See State ex rel. Remy v. City of Norman,* 1981 OK 139, ¶ 12, 642 P.2d 219, 222.

ee of his memory independent of any compiled list could be restrained, in the absence of a contract to the contrary. *Id.* at ¶¶ 10 & 16, 88 P.2d at 614, 615. In *Central Plastics Co. v. Goodson*, 1975 OK 71, 537 P.2d 330, the Oklahoma Supreme Court repeated the principle that "in the absence of an express prohibitory agreement, the employee may on a change of employment solicit such customers as long as he proceeds from his memory rather than by the unauthorized use of a list of customers." *Id.* at ¶ 21, 537 P.2d at 334. The Court stressed that equity does not protect names and addresses that are remembered or that are easily ascertainable by observation or by reference to directories.[2]

¶ 11 The case at bar was brought under the provisions of Oklahoma's Uniform Trade Secrets Act, 78 O.S.2001 §§ 85 through 94. The Act was adopted in 1986 and defines a "trade secret" as:

> information, including a formula, pattern, compilation, program, device, method, technique or process, that: a. derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and b. is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

78 O.S.2001 § 86(4). Misappropriation of a trade secret includes, but is not limited to, disclosure or use of a trade secret of another without express or implied consent by a person who knew that his knowledge of the trade secret was acquired by improper means or under circumstances giving rise to a duty to maintain its secrecy or limit its use. 78 O.S.2001 § 86(2)(b).

¶ 12 The Act provides two basic remedies for misappropriation. First, a plaintiff is entitled to actual damages. Actual damages are authorized by 78 O.S.2001 § 88, which provides:

**Damages**

A. Except to the extent that a material and prejudicial change of position prior to acquiring knowledge or reason to know of misappropriation renders a monetary recovery inequitable, a complainant is entitled to recover damages for misappropriation. Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

B. If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made pursuant to the provisions of subsection A of this section.

Under this section, a plaintiff who finds it difficult to determine quantifiable damages for actual loss and unjust enrichment may elect to take a reasonable royalty as an alternative to the usual calculation of actual damages.

¶ 13 Second, a plaintiff may also be entitled to injunctive relief. That relief is set forth in § 87, which provides:

**Injunctions—Court orders**

A. Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

B. In exceptional circumstances, an injunction may condition future use upon

---

2. The Court also established a set of five criteria that should be examined in determining whether there was unfair competition: "1. The information was confidential and not readily available to competitors; 2. The former employee solicited the customers of his former employer with the intent to injure him; 3. The former employee sought out certain preferred customers whose trade is particularly profitable and whose identities are not generally known to the trade; 4. The business is such that a customer will ordinarily patronize only one concern; 5. Unless interfered with, the established business relationship between the customer and the former employer would normally continue." 1975 OK 71 at ¶ 23, 537 P.2d at 334.

payment of a reasonable royalty for no longer than the period of time for which use could have been prohibited. Exceptional circumstances include, but are not limited to, a material and prejudicial change of position prior to acquiring knowledge or reason to know of a misappropriation that renders a prohibitive injunction inequitable.

C. In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order.

¶ 14 In the present case, the jury concluded that CDM's written customer list was a trade secret, that Defendants' use thereof was a misappropriation of a trade secret as defined by the Act, and that CDM was entitled to $75,000 in damages. The judgment entered in accordance with this verdict is now the law of the case.[3] On appeal, CDM asserts that it was also entitled to injunctive relief in addition to actual damages. It asserts that although Defendants no longer have the list, they will continue to misappropriate it by using their knowledge of the information contained in the list to contact potential customers, and CDM is entitled to an injunction prohibiting such future use and to royalties.

■ ¶ 15 Clearly, CDM is not entitled to additional royalties under § 88, because that injunction is merely an alternative method of granting actual damages "[i]n lieu of damages measured by any other methods," such as those for actual loss and unjust enrichment. Here, CDM elected to receive damages for actual loss and unjust enrichment, and, in fact, was awarded a $75,000 judgment which is now final. Thus, CDM may only assert entitlement to injunctive relief under § 87 for Defendants' "future use" of the trade secret.

■ ¶ 16 Under § 87(A), a prohibitive injunction banning the use of a trade secret

(here, the Outlook Address Book or a written customer list) may only be granted upon a showing of *actual* or *threatened* misappropriation. In other words, a plaintiff has the burden of proving that a defendant is able to continue his or her misappropriation. Here, evidence was presented that Defendants had not only returned the written customer list, but had also purged the list from their phones and computers. Furthermore, because the customer list contained the names of 775 CDM customers, it is unlikely that such a lengthy list could be memorized.[4] By denying a prohibitive injunction, the trial court implicitly concluded[5] that Defendants did not have access to the list and no longer had the ability to misappropriate the list. This conclusion is supported by the evidence. Although conflicting evidence was presented, we defer to the judgment of the trial court, which is in the best position to observe the behavior and demeanor of the witnesses and to gauge their credibility. *Mueggenborg v. Walling*, 1992 OK 121, 836 P.2d 112. Accordingly, we find no abuse of discretion in the trial court's refusal to grant a prohibitive injunction.

■ ¶ 17 Under § 87(B), an injunction for future royalties may only be granted in "exceptional circumstances" where such an injunction is more appropriate than a prohibitive injunction. The section notes that such circumstances include, but are not limited to, "a material and prejudicial change of position prior to acquiring knowledge or reason to know of a misappropriation that renders a prohibitive injunction inequitable." Furthermore, a royalty injunction may only continue "for no longer than the period of time for which use could have been prohibited." The comment to § 2 of the Uniform Trade Secrets Act, from which § 87 was derived, further explains:

> Section 2(b) deals with the special situation in which future use by a misappropriator

---

3. According to OSCN records, a formal judgment on the jury verdict was entered on November 3, 2008, and was not appealed.

4. Defendants are not prohibited from using "memory independent of any compiled list" in contacting CDM customers. *See Brenner v. Stavinsky*, 1939 OK 131, 184 Okla. 509, 88 P.2d at 615.

5. A trial court's general decision is presumed to include a finding favorable to the successful party upon every fact necessary to support it. *Carpenter v. Carpenter*, 1982 OK 38, 645 P.2d 476; *KMC Leasing, Inc. v. Rockwell–Standard Corp.*, 2000 OK 51, 9 P.3d 683.

will damage a trade secret owner but an injunction against future use nevertheless is inappropriate due to exceptional circumstances. Exceptional circumstances include the existence of an overriding public interest which requires the denial of a prohibitory injunction against future damaging use and a person's reasonable reliance upon acquisition of a misappropriated trade secret in good faith and without reason to know of its prior misappropriation that would be prejudiced by a prohibitory injunction against future damaging use.

¶ 18 Here, CDM failed to demonstrate any overriding public interest or other exceptional circumstance justifying a royalty injunction. More importantly, the granting of a royalty injunction is conditioned upon a misappropriator's *future ability* to use a trade secret upon payment of a reasonable royalty. *See Progressive Products, Inc. v. Swartz*, 41 Kan.App.2d 745, 205 P.3d 766 (2009)(review granted March 8, 2010). It is only an *alternative* to a prohibitive injunction; neither may be granted absent actual or threatened misappropriation. Here, the trial court implicitly determined that ACC no longer had the ability to misappropriate the written customer list. Accordingly, we find no abuse of discretion in the trial court's denial of CDM's motion for a royalty injunction.[6]

## CONCLUSION

¶ 19 For all these reasons, the trial court's denial of CDM's motions for new trial and for injunction is hereby affirmed.

¶ 20 AFFIRMED.

GOODMAN, J., concurs, and RAPP, J., not participating.

---

**6.** We find the cases cited by CDM distinguishable. *A & H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc.*, 967 F.Supp. 1457 (E.D.Pa. 1997), remanded after review, 166 F.3d 197 (3d Cir.1999), was a trademark infringement case where a royalty injunction was awarded to A & H, the owner of the "The Miracle Suit" trademark, because *Victoria's Secret intended to continue using the infringing mark* on its swimwear. *Electronic Data Systems Corp. v. Heinemann*, 268 Ga. 755, 493 S.E.2d 132 (1997), involved the

granting of a royalty injunction because the defendants *intended to continue using the misappropriated computer software trade secrets in their own products*, and exceptional circumstances existed because of the public's interest in competition, the plaintiff's delay in bringing suit, and the adequacy of the royalty to protect the parties' respective interests. In the case at bar, the evidence indicated that ACC no longer has the ability to misappropriate the customer list.