2010 OK CIV APP 71

**MTG GUARNIERI MANUFACTURING, INC., d/b/a Hearn Machine Tool, Plaintiff/Appellant,**

v.

**Bradley CLOUATRE, Bryan Jay, Dean Goforth, Jason Cherry and Sooner Perforations and Machine Co., L.L.C., Defendants/Appellees.**

No. 107,138.

Court of Civil Appeals of Oklahoma, Division No. 2.

June 17, 2010.

---

Larry Jay McMains, Johnston & McMains, PC, Seminole, OK, for Plaintiff/Appellant.

Joel D. Butterworth, Holdenville, OK, for Defendant/Appellee Bradley Clouatre.

Robert L. Irby, Irby & Irby, P.L.L.C., Holdenville, OK, for Defendant/Appellee Bryan Jay.

Harold E. Heath, Harold Heath Law Offices, P.C., Holdenville, OK, for Defendants/Appellees Dean Goforth and Sooner Perforations and Machine Co., L.L.C.

DEBORAH B. BARNES, Judge.

¶ 1 This appeal involves an agreement "not to use during or after termination of employment or divulge to others any secret or confidential information," and allegations of trade secret misappropriation. MTG Guarnieri Manufacturing, Inc., d/b/a Hearn Machine Tool (Hearn) is the former employer of Bradley Clouatre (Clouatre) and Bryan Jay (Jay). Hearn alleges that Clouatre and Jay breached their agreement with Hearn by using and divulging certain information acquired at Hearn to their current employer, Sooner Perforations and Machine Co., L.L.C. (Sooner Perforations). Hearn also alleges that Sooner Perforations's manager and sole owner, Dean Goforth (Goforth), its employee Jason Cherry (Cherry), Clouatre and Jay misappropriated Hearn's trade secrets. The trial court granted each defendant's motion for summary judgment and denied Hearn's new trial motion.

¶ 2 Hearn timely appealed. The appeal has been assigned to the accelerated docket and stands submitted without appellate briefing pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S. Supp.2004, ch. 15, app. 1. After reviewing the record on appeal and applicable law and considering oral arguments presented to the panel by the parties on April 9, 2010, we find that the trial court erred in granting summary judgment because genuine issues of material fact remain. Therefore, we reverse the trial court's order granting summary judgment and its order denying Hearn's Motion for New Trial. We remand this case for further proceedings in a manner consistent with this Opinion.

## UNCONTROVERTED FACTS [1]

¶ 3 The following material facts are uncontroverted:

---

1. Hearn does not specifically controvert the facts asserted in defendants' motions for summary judgment but does include its own statement of controverted material facts in its responses; no reply briefs were filed and there is no indication in the record that any defendant took issue with Hearn's failure to specifically controvert the facts asserted in the motions for summary judgment. Nevertheless:

    Any party opposing summary judgment or summary disposition of issues shall file ... a concise written statement of the material facts as to which a genuine issue exists.... All material facts set forth in the statement of the movant which are supported by acceptable evidentiary material shall be deemed admitted for the purpose of summary judgment or summary disposition *unless specifically controverted by the statement of the adverse party which is supported by acceptable evidentiary material. If the motion for summary judgment or summary*

1. Clouatre and Jay, both welders, are former employees of Hearn.

2. Hearn is a manufacturing company which produces, pertinent to this appeal, perforated pipe for use in the oil and gas industry.

3. Neither Clouatre nor Jay had any experience perforating pipe prior to their employment at Hearn.

4. As Hearn employees, Clouatre and Jay each executed an agreement [2] containing, in pertinent part, the following: (1) "I shall not use during or after termination of employment or divulge to others any secret or confidential information," and (2) "I agree that upon termination of employment with the Company I will deliver to the Company all drawings, blueprints, manuals, formulas, customer lists and all other materials obtained during the period of my employment."

5. Hearn does not own any patents.

6. Jay was directly involved in the construction of Hearn's drill machine used to perforate pipes.

7. Any knowledge of the customers of Hearn attributable to Jay and Clouatre is from their memories and not from any tangible items taken from Hearn.

8. Clouatre and Jay are currently employed by Sooner Perforations.

9. Sooner Perforations is also in the business of perforating pipe, but, unlike Hearn, it uses plasma technology.

10. Clouatre, Jay, and Cherry are employees of Sooner Perforations, and Goforth is the manager and owner of Sooner Perforations.

## PROCEDURAL BACKGROUND

¶ 4 Hearn filed its Petition on April 22, 2008, claiming misappropriation of trade secrets, breach of contract, tortious interference with business relations, conversion, and violation of standards of good faith and fair dealing. All defendants filed motions for summary judgment.[3] In a court minute filed February 18, 2009, the trial court sustained the summary judgment motions. The trial court's "Order Sustaining Motions for Summary Judgment" was filed on March 6, 2009. On February 20, 2009, Hearn filed a motion for new trial asking the trial court to reexamine its decision on defendants' Motions for Summary Judgment. In a Journal Entry filed on May 26, 2009, the trial court denied Hearn's motion for new trial. From this order, and from the "Order Sustaining Motions for Summary Judgment," Hearn appeals.

¶ 5 Hearn asserts the following issues in the Petition in Error: (1) the trial court failed to recognize the existence of material disputed facts and conflicting evidence that should have rendered summary judgment inappropriate; (2) the trial court erred by using 15 O.S.2001 § 219A as a basis for its decision; and (3) the trial court failed to apply the correct law, including 78 O.S.2001 §§ 85–94. We find that the trial court erred because genuine issues of material fact remain. Therefore, we reverse and remand for further proceedings.

---

*disposition is granted, the party or parties opposing the motion cannot on appeal rely on any fact or material that is not referred to or included in the statement in order to show that a substantial controversy exists.*
Rule 13(b), Rules for District Courts of Oklahoma, 12 O.S. Supp.2002, ch. 2, app. (emphasis added).

**2.** The language contained in the agreements signed by Clouatre and Jay is identical. Clouatre signed his agreement on July 1, 2002, and Jay signed his agreement on July 2, 2002. *See* Tab 8, at Exh. A; Tab 9, at 3–I. Although it is unclear from the record when Jay began and ended his employment at Hearn, and when both Clouatre and Jay began their employment at Sooner Perforations, Clouatre states that he "was an em-

ployee of [Hearn] from July 1, 2002, until the middle of 2003, and from January 17, 2002[sic], to April 6, 2006." Tab 8, at Material Fact no. 1.

**3.** Clouatre filed his motion for summary judgment on January 15, 2009. Jay also filed his motion for summary judgment on January 15, 2009. Goforth and Sooner Perforations filed their motion for summary judgment on January 29, 2009. Cherry's motion for summary judgment states that it incorporates the motions for summary judgment of the other defendants. Although Cherry appeared by his attorney, Richard E. Butner, at the hearing on the motions for summary judgment, Cherry did not appear at the hearing on Hearn's motion for new trial. Cherry's counsel has not filed an entry of appearance on appeal.

## STANDARD OF REVIEW

¶ 6 The standard of review for this appeal is as follows:

Summary process—a special pretrial procedural track pursued with the aid of acceptable probative substitutes—is a search for undisputed material facts which, *sans* forensic combat, may be utilized in the judicial decision-making process. Summary relief is permissible where neither the material facts nor any inferences that may be drawn from uncontested facts are in dispute, and the law favors the movant's claim or liability-defeating defense. Only those evidentiary materials which eliminate from trial some or all fact issues on the merits of the claim or defense afford legitimate support for *nisi prius* resort to summary process for a claim's adjudication.

Summary relief issues stand before us for *de novo* review. All facts and inferences must be viewed in the light most favorable to the non-movant. Appellate tribunals bear the same affirmative duty as is borne by *nisi prius* courts to test for legal sufficiency all evidentiary material received in summary process in support of the relief sought by the movant. Only if the court should conclude there is no material fact (or inference) in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary relief in its favor. *A trial court's denial of a motion for new trial is reviewed for abuse of discretion. Where, as here, our assessment of the trial court's exercise of discretion in denying defendants a new trial rests on the propriety of the underlying grant of summary judgment, the abuse-of-discretion question is settled by our de novo review of the summary adjudication's correctness.* Judicial discretion is abused when a trial court errs with respect to a pure, unmixed question of law.

*Reeds v. Walker,* 2006 OK 43, ¶¶ 8–9, 157 P.3d 100, 106–107 (footnotes omitted, emphasis added). *See also* Rule 13, Rules for District Courts of Oklahoma, 12 O.S. Supp. 2002, ch. 2, app.

## ANALYSIS

¶ 7 Hearn claims that Clouatre and Jay breached their agreements "not to use during or after termination of employment or divulge to others any secret or confidential information," and that all defendants misappropriated Hearn's trade secrets. The alleged "secret or confidential information" and trade secrets are (1) Hearn's customer information,[4] and (2) Hearn's methods, systems, and processes used to simultaneously perforate multiple pipe joints.[5] Hearn seeks, as remedies, monetary damages, unjust enrichment, and/or a permanent injunction against all defendants preventing them from using the secret or confidential information and trade secrets acquired by Clouatre and/or Jay during their employment with Hearn.[6]

---

4. We note that Hearn states in its Response to the motion for summary judgment of Jay that "[t]hough it is true that one element of the confidential information and trade secrets which Hearn seeks to protect is its customer base, of far more importance is the protection of its methods, systems, and processes." Tab 13, at p. 4.

5. Hearn alleges that Sooner Perforations is currently using a technique, method, system, or process to perforate pipe that was developed by Hearn. Hearn phrases this alleged trade secret in more than one way. The most descriptive appears to be: the "technique and system for simultaneously perforating multiple pipe joints...." Tab 12, at Controverted Fact no. 4, p. 2.

6. Hearn argues that a permanent injunction is the most appropriate remedy because (among other factors) without it, Hearn will suffer irreparable harm in the form of the loss of its perforating business. Title 78 O.S.2001 § 87 states:

A. Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

B. In exceptional circumstances, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time for which use could have been prohibited. Exceptional circumstances include, but are not limited to, a material and prejudicial change of position prior to acquiring knowledge or reason to know of a misappropriation that renders a prohibitive injunction inequitable.

### 1. Hearn's Customer Information as "Secret or Confidential Information" Pursuant to the Agreement Signed by Clouatre and Jay

■ ¶ 8 Hearn claims that Clouatre and Jay breached their agreements "not to use during or after termination of employment or divulge to others any secret or confidential information" by utilizing customer information of Hearn. Hearn does not simply allege that Clouatre and Jay took tangible customer lists.[7] Instead, Hearn states, for example, that Clouatre "had knowledge of our customer lists *and pricing* for our services." [8] (Emphasis added). In the deposition of Hearn's president, Matthew Guarnieri, pp. 4–5, he is asked to identify the secret or confidential information Clouatre allegedly utilized. Guarnieri identifies various factors, including "[t]he customer list to which we had. *The known market that we operated within. The monies that were made from that process.*" (Emphasis added.) [9]

■ ¶ 9 Title 78 O.S.2001 § 92 states that the Uniform Trade Secrets Act (UTSA) does not affect contractual remedies, whether or not based upon misappropriation of a trade secret. To recover for a breach of contract, Hearn must show: 1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach. *Digital Design Group, Inc. v. Information Builders*, 2001 OK 21, ¶ 33, 24 P.3d 834, 843.

¶ 10 Regarding the first element, it is undisputed that Clouatre and Jay signed agreements "not to use during or after termination of employment or divulge to others any secret or confidential information." Regarding the remaining elements, although "[a]s a general matter, '[c]onfidential data regarding operating and pricing policies can ... qualify as trade secrets,'" the focus for determining whether the agreements were breached is not on whether Hearn's customer information qualifies as a trade secret under the UTSA. *Southwest Stainless, LP v. Sappington*, 582 F.3d 1176, 1189 (10th Cir.2009) (quoting *Black, Sivalls & Bryson, Inc. v. Keystone Steel Fabrication, Inc.*, 584 F.2d 946, 952 (10th Cir.1978)). Instead, the focus is on whether the agreements signed by Clouatre and Jay were intended to protect Hearn's customer information. "A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." 15 O.S.2001 § 152. Whether it was the intent of the parties to protect Hearn's customer information as "secret or confidential information" in their agreements is unresolved and in dispute.

¶ 11 It is also disputed whether Clouatre and/or Jay actually utilized Hearn's customer information and did so to Hearn's detriment. For example, in Jay's motion for summary judgment, he states that any loss of business on the part of Hearn is only the result of Hearn's higher prices, antiquated technique, and natural split in the market since the formation of Sooner Perforations.[10] Jay asserts that Hearn has no evidence that it has suffered any damages attributable to any

---

C. In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order.

7. In *Brenner v. Stavinsky*, 1939 OK 131, ¶ 16, 88 P.2d 613, 615, the Oklahoma Supreme Court stated:

[A] list of customers built up through years of effort in a line of business where such a list constitutes an important asset of business is a species of property in the nature of or comparable to a trade secret, and ... where an employee obtains such a list through confidence placed in him or surreptitiously he may be restrained from using it. This court would be loath to say, however, that the use by a former employee of his memory independent of any compiled list could be restrained, in the absence of a contract to the contrary.

*Brenner* is not applicable because the focus is on whether the parties intended to include Hearn's customer information as "secret or confidential information" in their agreement, and, therefore, for this breach of contract claim it need not be determined whether the customer information qualifies as a trade secret under the Uniform Trade Secrets Act. Moreover, as set forth below, Hearn seeks protection of more than just "a list of customers."

8. Response to Interrogatory No. 5, attached to Clouatre's motion for summary judgment.

9. Tab 13, Exh. C, pp. 44–45.

10. Tab 9, at Uncontroverted Fact no. 13.

defendants in this case.[11] On the other hand, Guarnieri states in his affidavit that Sooner Perforations "has an unfair competitive advantage because it has not been required to spend the time and money invested by Hearn in developing its ... market. The loss of profits in Hearn's pipe perforating division caused by the unfair competition of Sooner will have a dramatic impact on the viability of the entire company." [12] Because genuine issues of material fact remain, the trial court erred in granting summary judgment on the issue of whether Clouatre and Jay breached their agreements "not to use during or after termination of employment or divulge to others any secret or confidential information."

### 2. Hearn's Pipe Perforating Methods, Systems, and Processes as a Trade Secret Pursuant to the UTSA

■ ¶ 12 In 1986 Oklahoma adopted the UTSA, 78 O.S.2001 §§ 85–94.[13] To prove

misappropriation of a trade secret, Hearn must show (i) the existence of a trade secret, (ii) misappropriation of the secret by defendants, and (iii) use of the secret to Hearn's detriment.[14] As detailed below, all three elements are in genuine dispute regarding Hearn's pipe perforating methods, systems, and processes.

### i. Existence of a Trade Secret

■ ¶ 13 The UTSA sets forth the definition of a trade secret in Oklahoma; in addition, the Oklahoma Supreme Court has adopted six factors from the Restatement of Torts, § 757, Comment b (1939), to help determine whether information is a trade secret. *Amoco Production Co. v. Lindley*, 1980 OK 6, 609 P.2d 733. *See also Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1245 (10th Cir.2006).[15] The UTSA, § 86, defines a trade secret as:

11. Jay supports this assertion by citing to p. 70 of Guarnieri's deposition, attached to Jay's Motion for Summary Judgment, Tab 9, that states:

Q. ... Do you have any evidence ... you have in fact lost business so far?
A. Not on our books per say [sic]. I mean it is through word of mouth that business had gone to and thereafter had been customers that we have operated with before....

12. Tab 13, at Exh. I.

13. Section 92 of the UTSA states:

A. Except as provided for in subsection B of this section, the Uniform Trade Secrets Act displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.
B. The Uniform Trade Secrets Act does not affect:
1. contractual remedies, whether or not based upon misappropriation of a trade secret; or
2. other civil remedies that are not based upon misappropriation of a trade secret; or
3. criminal remedies, whether or not based upon misappropriation of a trade secret.

14. *Micro Consulting, Inc. v. Zubeldia*, 813 F.Supp. 1514, 1534 (W.D.Okla.1990), affirmed, 959 F.2d 245 (10th Cir.1992). *See also* 78 O.S. 2001 §§ 85–94 and, specifically, § 86.

15. The Oklahoma Supreme Court has not addressed the definition of a trade secret since the passage of the UTSA. *Amoco* pre-dates the passage of the UTSA, but *Amoco* provides helpful guidance for interpreting the UTSA. In *Amoco*, the Oklahoma Supreme Court, in discussing the

definition of trade secret, cites with approval the six factors found in the Restatement of Torts, § 757, Comment b (1939). Although the UTSA's definition of trade secret is broader than the Restatement's, "an exact definition of a trade secret is not possible," and the Restatement factors provide helpful guidance in determining whether information in a given case constitutes a trade secret pursuant to the UTSA. *Central Plastics Co. v. Goodson*, 1975 OK 71, ¶ 16, 537 P.2d 330, 333, and *Amoco Production Co. v. Lindley*, 1980 OK 6, ¶ 41, 609 P.2d 733, 743 (quoting the Restatement of Torts, § 757, Comment b, at p. 6 (1939)). *See also Pincheira v. Allstate Insurance Co.*, 144 N.M. 601, 190 P.3d 322 (2008) (quoting *Basic American, Inc. v. Shatila*, 133 Idaho 726, 992 P.2d 175 (1999)) (While the definition of a trade secret in New Mexico's Trade Secret Act—the same definition found in Oklahoma's UTSA—"is broader than the *Restatement's*, these factors 'still provide helpful guidance to determine whether the information in a given case constitutes 'trade secrets' within the definition ...' "). In this regard, we agree with the 10th Circuit's interpretation of trade secret law in Oklahoma. In *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1245 (10th Cir.2006), the circuit court stated that, in addition to the UTSA, "Oklahoma has adopted six factors from the Restatement of Torts to help determine whether information is a trade secret...." *Accord, Southwest Stainless, LP v. Sappington*, 582 F.3d 1176, 1189 (10th Cir.2009). "Courts in [UTSA] jurisdictions often apply factors from the Restatement in order to facilitate application of the tests embodied in the statute." *Basic American, Inc. v. Shatila*, 133 Idaho 726, 992 P.2d 175, 184 (1999).

Furthermore, the court in *Amoco* briefly discusses the conflicting policy considerations that

[I]nformation,[16] including a formula, pattern, compilation, program, device, method, technique or process, that:

    a. derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

    b. is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

The Restatement factors are: (1) the extent to which the information is known outside of the business;[17] (2) the extent to which the information is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information;[18] (4) the value of the information to the business and to competitors; (5) the amount of effort or money expended by the business in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *See Amoco Production Co. v. Lindley,* 1980 OK 6, ¶ 41, 609 P.2d 733, 743. Whether information qualifies as a trade secret is a question of fact. *See Central Plastics Co. v. Goodson,*

1975 OK 71, ¶ 29, 537 P.2d 330, 333–35. *See also Black, Sivalls & Bryson, Inc. v. Keystone Steel Fabrication, Inc.,* 584 F.2d 946, 951 (10th Cir.1978).

¶ 14 Applying the UTSA's definition and the Restatement factors to this case, and viewing the facts in a light most favorable to Hearn, it is apparent that the issue of whether Hearn's perforation methods, systems and processes constitute a trade secret is a disputed issue of fact. In regard to the efforts employed by Hearn to maintain secrecy, Hearn has required its employees to sign an agreement requiring them not to "use during or after termination of employment or divulge to others any secret or confidential information." *See supra.* Moreover, Hearn asserts that the processes and methods it uses to perforate pipe cannot be duplicated by a casual observer of its operations and those who might have the ability or opportunity to replicate them are required to sign non-disclosure agreements.[19] Regarding the amount of effort or money expended by Hearn in developing the information, Hearn asserts that the research and development required to produce the processes and methods used in its perforating business were expensive and time consuming.[20] As to the

---

arise in trade secret litigation between an employer and its right to use its employees and resources to its utmost advantage, and a former employee's right to transfer his/her skills and knowledge to new employment opportunities. *See infra.* An awareness of this basic tension between the interests of the employer and the employee in trade secret litigation is also helpful when interpreting the UTSA.

16. The agreements state that Clouatre and Jay will "not use during or after termination of employment or divulge to others any secret or confidential *information.*" (Emphasis added.) The UTSA defines trade secret broadly as *"information,* including...." (Emphasis added.) Furthermore, Guarnieri states in his deposition, at pp. 17–18 (Tab 9), that when Clouatre and Jay signed their respective agreements he told them that the "secret or confidential information" corresponds to the trade secrets of Hearn:

    Q. In paragraph one, you talk about "secret or confidential information". Did you tell them what you meant by "secret or confidential information"?
    A. Yes.
    Q. You did?
    A Yes.
    Q. What did you tell them?

    A. That they—the trade secrets of this company was to not be discussed outside this company business.

17. "Trade secrets and confidential information, in order to be protected against disclosure by employees, must be the particular secrets of the employer as distinguished from the general secrets of the trade in which he is engaged." *Central Plastics Co. v. Goodson,* 1975 OK 71, ¶ 17, 537 P.2d 330, 333 (citation omitted).

18. "Trade secret status is difficult to establish and often entails establishing that affirmative and elaborate steps were taken to insure that the secret claimed would remain so." *Amoco Production Co. v. Lindley,* 1980 OK 6, ¶ 43, 609 P.2d 733, 743.

19. Tab 13, at Controverted Fact no. 5, and supported by an excerpt from Guarnieri's deposition at Exh. E.

20. Tab 13, at Controverted Fact no. 6, and supported by an excerpt from Guarnieri's deposition at Exh. F. *See also* Tab 13, at Exh. D. (In the excerpt from Jay's deposition found in Exh. D, Jay states that from start to finish it took as many

value of the information, Hearn asserts that the perforating portion of its business is the most lucrative.[21] Finally, in regard to the information not being generally known, Hearn asserts that prior to Sooner Perforations's misappropriation, Hearn was the only company in the world drilling multiple pipe joints.[22]

¶ 15 The defendants dispute Hearn's claim that its perforating processes, methods, and techniques are a trade secret. They assert that Hearn did not attempt to obtain a patent or to take any legal action to protect its alleged trade secret other than to have Clouatre and Jay sign the agreements mentioned above.[23] They also assert that the process used by Hearn to perforate pipe is open to the public.[24]

¶ 16 Based upon the evidence presented at this stage in the litigation, we find that Hearn has shown "the reasonable probability, something beyond a mere contention, that [it] will be able to produce competent, admissible evidence at the time of trial which might reasonably persuade the trier of fact in [its] favor on the issue in dispute." *Davis v. Leitner*, 1989 OK 146, ¶ 15, 782 P.2d 924, 927. It is an issue in genuine dispute whether

Hearn's methods, systems, and processes used to simultaneously perforate multiple pipe joints constitute a trade secret.

### ii. Misappropriation of the Alleged Trade Secret

¶ 17 Although Sooner Perforations, unlike Hearn, uses "plasma technology" to perforate pipe, Hearn asserts that the system and method employed by Sooner Perforations is essentially the same as that employed by Hearn.[25] A well-established principle of trade secret law is that a party may not use another's *genuine trade secret*, even with independent improvements or modifications, so long as the product or process is substantially derived from the trade secret. *American Can Co. v. Mansukhani*, 742 F.2d 314, 328–29 (7th Cir. 1984).[26] "If the law were not flexible enough to reach such modifications, trade secret protection would be quite hollow." *Id.*

¶ 18 Hearn has attached an affidavit of its president, Matthew Guarnieri,[27] which states, in pertinent part, that Clouatre and Jay and a third person, in the presence of Hearn's president, "discussed adapting Hearn's pipe

as eight months for Hearn to develop its current system for perforating multiple pipe joints).

21. Tab 13, at Controverted Fact no. 7, and supported by excerpts from the depositions of Clouatre and Jay at Exh. G.

22. Tab 13, at Controverted Fact no. 4, and supported by excerpts from the depositions of Guarnieri and Jay at Exh. D.

23. Tab 11, at Relevant Fact no. 12, and supported by an excerpt from the deposition of Guarnieri at Exh. E, p. 40.

24. Tab 8, at Material Fact no. 9, and supported by excerpts from the depositions of Guarnieri at Exh. E, and Hearn employee Larry Minihan at Exh. F.

25. Tab 12, at Controverted Fact no. 9, and supported by the affidavit of Guarnieri at Exh. I, and by excerpts from the depositions of Guarnieri and Jay at Exh. J.

26. The Restatement of Torts, § 757, Comment c (1939), states, in relevant part:
    To subject a person to liability ... for the use of another's trade secret, there is no requirement that he use it in exactly the form in which he received it. He may be liable even if he uses it with modifications or improvements upon it effected by his own efforts. Differences in detail do not preclude liability if, substantially, the process used by the actor is derived from the other's secret.... The liability is avoided only when the contribution by the other's secret is so slight that the actor's process can be said to be derived from other sources; although even in such a case the actor is still subject to liability for harm caused by his disclosure or possession of the secret.... The extent of the modifications or improvements made by the actor upon the other's secret may, however, affect the computation of damages or profits for which he is liable to the other.

27. See n. 13, *supra.* Although Guarnieri's affidavit is unsigned, "[t]he materials attached to a response to a motion for summary judgment are not to be held to the standard of competent, admissible evidence. It is enough that [they] reasonably show the judge who is considering the motion that the party opposing the motion will be able at the time of trial to present competent, admissible evidence to support the allegations." *Davis v. Leitner*, 1989 OK 146, ¶ 13, 782 P.2d 924, 926.

perforating machine into a plasma machine...."[28] Hearn also cites to the deposition of Jay to support its assertion that Sooner Perforations adopted essentially the same process for perforating pipe as Hearn.[29] We find that Hearn has shown "the reasonable probability, something beyond a mere contention, that [it] will be able to produce competent, admissible evidence at the time of trial which might reasonably persuade the trier of fact" that Sooner Perforations's plasma technology is essentially the same as, or substantially derived from, Hearn's pipe perforating processes, methods, and techniques. *Davis v. Leitner*, 1989 OK 146, ¶ 15, 782 P.2d 924, 927.

¶ 19 Having determined that Sooner Perforations's plasma technology may be a misappropriation of Hearn's alleged trade secret, we must now analyze the defendants separately to determine if there is a genuine dispute as to whether they each may be found to have misappropriated Hearn's alleged trade secret.

### Clouatre and Jay

¶ 20 Regarding the two former employees, Clouatre and Jay, the issue of misappropriation is in genuine dispute. Misappropriation is defined, in pertinent part, as the "disclosure or use of a trade secret of another without express or implied consent by a person who: ... (2) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was: ... (b) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use...." 78 O.S.2001 § 86(2)(b). It is undisputed that both Clouatre and Jay signed an agreement while employed by Hearn "not [to] use during or after termination of employment or divulge to others

any secret or confidential information." Regarding Clouatre and Jay, the issue of misappropriation is in genuine dispute because its resolution depends upon two issues of disputed fact: whether the agreements gave rise to a duty to maintain the secrecy of Hearn's trade secrets, and whether Hearn's pipe perforation process is such a trade secret.

### Cherry

¶ 21 Regarding Cherry, an employee of Sooner Perforations, the issue of misappropriation is also in genuine dispute. Misappropriation is defined, in pertinent part, as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means," and/or as "disclosure or use of a trade secret of another without express or implied consent by a person who: ... (2) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was: ... (c) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use...." 78 O.S.2001 § 86(2)(c). Hearn asserts in its Response to Cherry's Motion for Summary Judgment that Cherry recognized that the information about Hearn's methods shared with him by Clouatre and Jay was confidential and contained trade secrets. Hearn cites to Cherry's own deposition in support of this assertion.[30] Applying the pertinent language found in the UTSA for the definition of misappropriation, there is a substantial controversy whether Cherry misappropriated Hearn's alleged trade secret.

### Goforth

¶ 22 Regarding Goforth, the manager and sole member[31] of Sooner Perfor-

---

**28.** Tab 12, at Exh. I.

**29.** Tab 12, at Exh. J.

**30.** Tab 14, at Exh. C and Exh. D. In the excerpts from Cherry's deposition provided in these exhibits, Cherry states that Clouatre and Jay identified a company to build a plasma perforating machine for Sooner Perforations, and that Clouatre and Jay told this company how they wanted the machine designed. The following exchange took place between Hearn's counsel

and Cherry in Cherry's deposition (Tab 14, at Exh. C, p. 49):

> [Hearn's counsel]: Okay. So your position is that the company [you and Clouatre and Jay] contacted and the knowledge about that company and its existence is a confidential—
> [Cherry]: Yes.
> [Hearn's counsel]:—trade secret?
> [Cherry]: Yes.

**31.** A "member" is defined under the Oklahoma Limited Liability Company Act as, in pertinent

ations, the issue of misappropriation by him in his individual capacity is also in genuine dispute. Misappropriation is defined, in pertinent part, as "acquisition of a trade secret of another by a person who *knows or has reason to know* that the trade secret was acquired by improper means," and/or as "use of a trade secret of another without express or implied consent by a person who: ... (2) at the time of disclosure or use, *knew or had reason to know* that his knowledge of the trade secret was: ... (c) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use...." *78 O.S.2001 § 86* (2) (emphasis added). Goforth claims that he was not involved with the day-to-day operations at Sooner Perforations,[32] that he merely assented to the business plan regarding entering the perforating pipe business communicated to him by Cherry,[33] and that there is no evidence that Goforth knew Clouatre and Jay were supposed to keep something secret.[34] However, Hearn asserts (citing to Goforth's deposition testimony) that Goforth "was advised of the wrongdoing of Jay and Clouatre and continued to compete against Hearn using the trade secrets and confidential information misappropriated by Sooner['s] employees, Cherry, Jay and Clouatre."[35] Therefore, there is a genuine dispute whether Goforth *knew* that there was a trade secret that was improperly acquired. Furthermore, even if Goforth did not have knowledge of the impropriety, there is a substantial controversy whether Goforth had *reason to know* as the acting manager of Sooner Perforations that the alleged trade secret was acquired as a result of either or both Clouatre and Jay breaching their agreements with Hearn.

¶ 23 Goforth asserts that as a manager of a limited liability company he cannot be personally liable without facts of personal wrongdoing. Goforth cites as authority 18 O.S.2001 § 2016(4), which states that "[a] manager is not liable for any action taken as a manager, or any failure to take any action, if the manager performed the duties of the office in compliance with the business judgment rule as applied to directors and officers of a corporation...." The business judgment rule in the context of corporate law relates to an action by a corporation or its shareholders against a director for breach of the director's duty of loyalty.[36] Therefore, this statute is inapposite. Goforth further asserts the only action taken by him was in his capacity as the manager of Sooner Perforations, not as an individual. Hearn asserts that before Sooner Perforations was ever formed, Cherry, Clouatre and Jay had provided to Goforth a business plan with confidential information and trade secrets misappropriated by Jay and Clouatre.

¶ 24 "A person who is a member or manager, or both, of a limited liability company is not liable for the obligations of a limited liability company solely by reason of bring such member or manager or both." 18 O.S.

part, "a person with an ownership interest in a limited liability company...." 18 O.S. Supp. 2010 § 2001(14).

**32.** Tab 11, at Relevant Fact no. 4, and supported by an excerpt from Goforth's deposition at Exh. A, p. 20.

**33.** Tab 11, at Relevant Fact no. 2, and supported by an excerpt from Goforth's deposition at Exh. A, p. 24.

**34.** Tab 11, at Relevant Fact no. 10, and supported by an excerpt from the deposition of Larry Minihan at Exh. B, p. 79.

**35.** Tab 15, at Controverted Fact no. 12. Goforth appears to waiver back and forth between admitting that he knew at least one of the former employees (Clouatre and Jay) signed an agreement not to use or divulge secret or confidential information, and denying that either one recalled signing such an agreement. Nevertheless, in the excerpt from Goforth's deposition on p. 38, attached as Exh. N, the following exchange appears in substantial support of Hearn's assertion:

Q. Okay. When you had that discussion with [Clouatre and Jay], in addition to telling them that they should have told about what they did to get terminated with Hearn, did you also address that confidentiality—
A. Yes, I did.
Q. And what did they say in that regard?
A. One of them didn't remember signing it, and they—one of them signed something and one of them didn't, I believe was the story.

**36.** *Warren v. Century Bankcorporation, Inc.*, 1987 OK 14, 741 P.2d 846; *Martin v. Johnson*, 1998 OK 127, ¶ 33 n. 9, 975 P.2d 889, 897 n. 9.

2001 § 2022. However, a manager of a limited liability company is liable for "[a]cts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law...." 18 O.S. Supp.2004 § 2017(B)(2). It is in dispute whether Goforth acted in good faith and did not engage in intentional misconduct or knowingly violate the law in performing his managerial duties for Sooner Perforations. If Goforth's actions were not in good faith and he knowingly violated the law, he is not shielded as a manager from personal liability.

### Sooner Perforations

¶ 25 Hearn correctly argues that Sooner Perforations is bound by the knowledge of employees under the doctrine of *respondeat superior.* In general, a principal is bound by notice to or the knowledge of his agent in respect to the matters within the agent's authority. *State of Oklahoma ex rel. Oklahoma Bar Association v. Scroggs,* 2003 OK 21, 70 P.3d 821. Furthermore, in general, even if a principal did not authorize an agent's acts, if the principal accepts the benefits of his/her agent's acts, or if the reasonably prudent person would become aware of those benefits, then the principal ratifies the agent's acts if the benefits are retained. *C.H. Stuart, Inc. v. Bennett,* 1980 OK 135, 617 P.2d 879. Therefore, Hearn argues, Sooner Perforations, through its employees, had constructive knowledge of the alleged misappropriation and/or ratified their alleged misappropriation of Hearn's trade secret.

¶ 26 *Respondeat superior* is a legal theory that holds an employer liable for the willful torts of an employee acting within the scope of employment in furtherance of assigned duties. *Schovanec v. Archdiocese of Oklahoma City,* 2008 OK 70, 188 P.3d 158. *See also Nelson v. Pollay,* 1996 OK 142, ¶ 7 n. 23, 916 P.2d 1369, 1374 n. 23 (under the doctrine of *respondeat superior,* a principal

or employer is generally held liable for those acts of an agent or employee which fall within the latter's employment or authority). Depending on the resolution of the disputed issues of fact regarding whether Sooner Perforations's employees misappropriated Hearn's trade secrets, Sooner Perforations may be bound by the acts of its employees in this case.

### iii. Use of the Alleged Trade Secret to Hearn's Detriment

¶ 27 In Jay's motion for summary judgment he states that any loss of business on the part of Hearn is the result of Hearn's higher prices, antiquated technique and natural split in the market since the formation of Sooner Perforations.[37] Jay asserts that Hearn has no evidence that it has suffered any damages attributable to any defendants in this case.[38] In Goforth and Sooner Perforations's Motion for Summary Judgment, they assert that Hearn simply expects all pipe perforating business to belong to it.[39] On the other hand, Guarnieri states in his affidavit that Sooner Perforations "has an unfair competitive advantage because it has not been required to spend the time and money invested by Hearn in developing its pipe perforating systems and market. The loss of profits in Hearn's pipe perforating division caused by the unfair competition of Sooner will have a dramatic impact on the viability of the entire company."[40] Based upon this conflicting evidence, we find that there is a substantial controversy as to whether the use of this alleged trade secret by Sooner Perforations has caused detriment to Hearn.

¶ 28 We note that Hearn seeks monetary damages and/or restitution ("unjust enrichment") as remedies. Regarding monetary damages and unjust enrichment, the UTSA, § 88, states:

A. Except to the extent that a material and prejudicial change of position prior to

---

37. Tab 9, at Uncontroverted Fact no. 13.

38. Jay supports this assertion by citing to p. 70 of Guarnieri's deposition, attached to Jay's Motion for Summary Judgment, Tab 9, that states:

Q. ... Do you have any evidence ... you have in fact lost business so far?

A. Not on our books per say [sic]. I mean it is through word of mouth that business had gone to and thereafter had been customers that we have operated with before.....

39. Tab 11, at Relevant Fact no. 17 and Exh. B.

40. Tab 13, at Exh. I.

acquiring knowledge or reason to know of misappropriation renders a monetary recovery inequitable, a complainant is entitled to recover damages for misappropriation. Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

B. If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made pursuant to the provisions of subsection A of this section.

However, Hearn primarily seeks an injunction to protect its information. Regarding an injunction, the UTSA, § 87, states:

A. Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

B. In exceptional circumstances, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time for which use could have been prohibited. Exceptional circumstances include, but are not limited to, a material and prejudicial change of position prior to acquiring knowledge or reason to know of a misappropriation that renders a prohibitive injunction inequitable.

C. In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order.

¶ 29 "Only if the court should conclude there is no material fact (or inference) in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary relief in its favor." *Reeds v. Walker*, 2006 OK 43, ¶ 9, 157 P.3d 100, 106 (footnote omitted). We find all three elements-(1) the existence of a trade secret, (2) misappropriation of the secret by the defendants, and (3) use of the secret to the plaintiff's detriment-are in genuine dispute regarding the misappropriation of Hearn's pipe perforating methods, systems, and processes. We also find genuine issues of material fact regarding Hearn's claim that Clouatre and Jay breached their agreements "not to use during or after termination of employment or divulge to others any secret or confidential information." Therefore, we find that the trial court erred in granting summary judgment.

## CONCLUSION

¶ 30 Hearn asserts in the Petition in Error that (1) the trial court failed to recognize the existence of material disputed facts and conflicting evidence that should have rendered summary judgment inappropriate; (2) the trial court erred by using 15 O.S.2001 § 219A as a basis for its decision; and (3) the trial court failed to apply the correct law, including 78 O.S.2001 §§ 85–94. Having found genuine disputes of material fact, we need not address all the other claims raised below—including tortious interference with business relations, breach of duty of good faith and fair dealing, and conversion—but remand this case to the trial court for further proceedings.[41]

¶ 31 After reviewing the record on appeal and applicable law and considering oral argu-

---

41. In regard to Hearn's assertion that the trial court erred in using 15 O.S.2001 § 219A as a basis for its decision, we decline to discuss this issue because there is no indication that the trial court applied § 219A as a basis for its decision or that the trial court assessed this issue below. This Court will not presume legal error from a silent record. *Hamid v. Sew Original*, 1982 OK 46, 645 P.2d 496. Rather, absent a record showing otherwise, this Court presumes that the trial court did not err. *Id. See also Evers v. FSF Overlake Associates*, 2003 OK 53, ¶ 18, 77 P.3d 581, 587 (holding that "it is not the duty of the appellate court on review to make first-instance determinations of disputed law or fact issues" that have been neither raised *nor assessed* at trial).

ments presented to the panel by the parties on April 9, 2010, we find that the trial court erred in granting summary judgment because genuine issues of material fact remain. Therefore, we reverse the trial court's order granting summary judgment and its order denying Hearn's motion for new trial. We remand for further proceedings in a manner consistent with this Opinion.

¶32 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

WISEMAN, C.J., and FISCHER, P.J., concur.