2014 OK CIV APP 34

**PROLINE PRODUCTS, L.L.C.,**
**Plaintiff/Appellee,**

v.

**Tim McBRIDE and Cameron McBride,**
**Defendants/Appellants.**

**No. 111590.**

Court of Civil Appeals of Oklahoma,
Division No. 3.

March 17, 2014.

Ryan S. Wilson, Derek B. Ensminger, Hartzog, Conger, Cason & Neville, Oklahoma City, Oklahoma, for Plaintiffs/Appellee.

Phillip L. Free, Blake Lawrence, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Oklahoma City, Oklahoma, for Defendants/Appellants.

BRIAN JACK GOREE, Judge.

¶ 1 Defendant/Appellants, Tim McBride and Cameron McBride, seek review of the trial court's order granting the motion of Plaintiff/Appellee, ProLine Products, L.L.C. (ProLine), for a temporary injunction preventing them from using any portion of the ProLine formulas to create an asphalt cold-patch additive. We hold the trial court's fact findings are not clearly against the weight of the evidence, and it did not abuse its discretion in determining there is a likelihood of success on the merits of ProLine's claim for misappropriation of a trade secret.

¶ 2 Tim and Cameron are the son and grandson, respectively, of ProLine's owner and president, Don McBride. ProLine sued Tim and Cameron, alleging they had misappropriated ProLine's formulas in violation of Oklahoma's Uniform Trade Secrets Act (Act), 78 O.S.2011 85–94, causing damage and irreparable harm to ProLine. ProLine sought to recover damages and to enjoin Tim and Cameron from using the ProLine formulas for any purpose. It moved for a temporary injunction, asserting that Tim and Cameron's continued misappropriation of the formulas was causing irreparable harm.

¶ 3 After an evidentiary hearing, the trial court granted the motion, finding that (1) ProLine owned two confidential formulas used to make asphalt products called Pro-Line Cold Patch and ProLine Bunker Material, (2) the formulas derived independent economic value from not being generally known or readily ascertainable, (3) the formulas are subject to reasonable efforts to maintain their secrecy, (4) the formulas are trade secrets, and (5) Defendants were privy to the formulas when they were employees of an affiliated company. The trial court ruled that (1) ProLine was likely to succeed on the merits, (2) irreparable harm to ProLine would result if the Defendants were not enjoined from misappropriating the formulas, (3) the effect of injunction on the Defendants is slight but failure to grant an injunction would have a substantial effect on ProLine, and (4) public policy weighs in favor of granting injunctive relief. The trial court enjoined Tim and Cameron from using the formulas in any manner and from disclosing them to third parties. It stated:

> This injunction is intended to encompass any attempt by Defendants to use any portion of the ProLine Formulas, even with independent improvements or modifications, to sell or create a cold patch additive for use in the asphalt industry or bunker material if any such additive or the process used to create it is substantially derived from the ProLine Formulas.

Tim and Cameron appeal from this order pursuant to 12 O.S.2011 952(b)(2), contesting the sufficiency of the evidence.

¶ 4 In reviewing a trial court's order granting or denying injunctive relief, we will examine and weigh the evidence, but we will not disturb the trial court's judgment unless the trial court has abused its discretion or the decision is clearly against the weight of the evidence. *Sharp v. 251st Street Landfill, Inc.*, 1996 OK 109, ¶ 4, 925 P.2d 546, 549. The grounds for issuing a temporary injunction in Oklahoma are: (1) the likelihood of success on the merits, (2) irreparable harm to the party seeking injunctive relief if relief is denied, (3) relative effect on the other interested parties, and (4) public policy concerns arising out of the issuance of injunctive relief. *Daffin v. State ex rel. Oklahoma Dep't of Mines*, 2011 OK 22, ¶ 7, 251 P.3d 741, 745. In contesting the sufficiency of the evidence, Tim and Cameron appear to be challenging the trial court's determination of the first factor, likelihood of success on the merits.

¶ 5 Tim and Cameron first argue that ProLine failed to prove the existence of a trade secret. Pursuant to the Uniform Trade Secrets Act, 78 O.S.2011 86(4), a trade secret means:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique or process, that:
>
> a. derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> b. is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

¶ 6 Don McBride testified that he and a chemist spent four years working on a formula for cold-patch formula, sending materials to each other and testing them. He said they found a special ingredient (Ingredient) that made the cold-patch asphalt workable in all seasons. Don said that Ingredient was the reason that his cold-patch product was better than and preferred over his competitors' products.

¶ 7 Don testified that if the ProLine formula became "unsecret," it would "kill the asset value of it." He said that Tim did the blending of the components pursuant to the recipe provided and therefore knew the formula. Don said he had many discussions with Tim regarding the secret nature of the formula and Tim assured him the secret was safe. After a falling-out and reconciliation in 2011, Don had Tim and other family members and employees sign non-disclosure agreements to protect the formula.

¶ 8 Don's testimony is clear and convincing evidence establishing prima facie that the ProLine formula is a trade secret. The evidence that Tim and Cameron offered to controvert the existence of a trade secret was

published material of a third party which discussed asphalt additives in the context of hot-mix applications. This evidence does not negate ProLine's trade secret claim because it does not demonstrate that use of Ingredient in cold-patch applications is generally known. Furthermore, Tim agreed that ProLine was better than competing products because of its unique formulation containing Ingredient. Based on this record, the trial court's finding the formula is a trade secret is not clearly against the weight of the evidence.

¶ 9 Tim and Cameron's second contention is that ProLine failed to prove they had misappropriated any trade secret. Under the Act, 78 O.S.2011 86(2)(b)(2)(b), misappropriation includes "use of a trade secret of another without express or implied consent by a person who ... at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was ... acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use...." A trade secret is "used" if a product or process is substantially derived from the trade secret, even if it is with independent improvements or modifications. *MTG Guarnieri Mfg., Inc. v. Clouatre*, 2010 OK CIV APP 71, ¶ 17, 239 P.3d 202, 211. Tim asserts he did not use ProLine's trade secret and that his cold-patch product uses different ingredients from ProLine's product.

¶ 10 Don testified that during their 2011 falling out, Tim told him, "I'll manufacture ProLine because I own it as much as you do." He said he then learned that Tim had set up accounts to order the same materials used to manufacture ProLine Cold-Patch. Don said he also learned that Tim was having discussions with a ProLine distributor in Texas to cut him out and sell them the ProLine additive that he was manufacturing. He testified he then sent a cease-and-desist letter. After he and Tim reconciled, Don purchased from Tim the materials that Tim had ordered and used them to manufacture ProLine.

¶ 11 Don testified that in 2012, Tim and Cameron left the family company again. At the same time, the Texas distributor stopped ordering supplies from ProLine. Tim testified that he and Cameron spent four to five months on research and development of a new cold-patch product. He said he did not use the ProLine formula. However, Tim acknowledged that he looked for an ingredient with the same characteristics as Ingredient. He also acknowledged that the Texas distributor bought his product and was paying his attorney fees in the present case.

¶ 12 This record provides clear and convincing evidence that Tim developed his formulation based on his knowledge of the characteristics of Ingredient and therefore his product was substantially derived from ProLine's trade secret. The trial court's finding is not clearly against the weight of the evidence.

¶ 13 For the foregoing reasons, we hold the trial court did not abuse its discretion in determining there is a likelihood of success on the merits on ProLine's claim for misappropriation of a trade secret. Its order granting a temporary injunction is AFFIRMED.

BELL, P.J., and MITCHELL, J., concur.